IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN FOY,

        Plaintiff,

v.                                                                CIV 20-1114 KBM

KILOLO KIJAKAZI,[1]
Acting Commissioner of Social Security,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Opposed Motion to Reverse

and/or Remand (*Doc. 22*), filed on June 14, 2021. Pursuant to 28 U.S.C. § 636(c) and

Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge

and entering final judgment. *See Docs. 7*; *12*; *13.* Having considered the record,

submissions of counsel, and relevant law, the Court finds Plaintiff's motion is not well-

taken and will be denied.

I.    **Procedural History**

Mr. John Foy ("Plaintiff") filed an application with the Social Security

Administration for Disability Insurance Benefits ("DIB") under Title II of the Social

Security Act, on September 25, 2018. Administrative Record[2] (AR) at AR 198-204. He

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Document 19-1 comprises the sealed Administrative Record. *See Doc. 19-1.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

alleged a disability onset date of March 16, 2018. *See* AR at 198.

Disability Determination Services determined that Plaintiff was not disabled both initially (AR at 89-99) and on reconsideration (AR at 102-12). Plaintiff requested a hearing with an Administrative Law Judge ("ALJ") on the merits of his application. AR at 125-26. Both Plaintiff and a vocational expert (VE) testified during the *de novo* hearing. *See* AR at 34-88. ALJ Lillian Richter issued an unfavorable decision on March 5, 2020. AR at 19-27. Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 192-94), which the council denied on September 28, 2020 (AR at 1-5). Consequently, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.    Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the

assessment of the claimant's residual functional capacity ("RFC"), he is unable to perform his past relevant work ("PRW"). 20 C.F.R § 404.1520(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of [his] medical impairments." *Ryan v. Colvin*, Civ. 15-0740 KBM, 2016 WL 8230660, at *2 (D.N.M. Sept. 29, 2016) (citing 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1)). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given his age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988)); *see also* 20 C.F.R. § 404.1520(a)(4)(v).

At Step One of the process,[3] ALJ Richter found that Plaintiff "has not engaged in substantial gainful activity since" his alleged onset date of March 16, 2018. AR at 21 (citing 20 C.F.R. §§ 404.1571-1576). At Step Two, she concluded that Plaintiff "has the following severe impairments: degenerative disc disease cervical spine, status post decompression and fusion, obesity, bilateral carpal tunnel syndrome, bilateral epicondylitis, cervical radiculopathy, chronic pain syndrome, peripheral neuropathy, and nonunion spinal fusion." AR at 21 (citing 20 C.F.R. § 404.1520(c)). ALJ Richter also determined that Plaintiff had the "medically determinable impairments of nephrolithiasis, nausea and vomiting, irritable bowel syndrome, gastroesophageal reflux disease

---

[3] ALJ Richter first found that Plaintiff "meets the insured status requirements of the Social Security Act through December 31, 2023." AR at 21.

(GERD), gastroparesis, and hyperlipidemia[,]" but those impairments did "not have more than a minimal effect on [his] ability to perform basic work activities, have responded to treatment or have not met the durational requirements" and were therefore non-severe. AR at 21-22.

At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." AR at 21 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). The ALJ determined that:

> [Plaintiff] has the [RFC] to perform sedentary work as described in 20 [C.F.R. §] 404.1567. He can occasionally reach, handle, finger and feel bilaterally. He can frequently push and pull with the bilateral upper extremities. He can never climb ladders, ropers, or scaffolds. He can never crawl. He should avoid exposure to vibration.

AR at 22. The VE testified, and the ALJ determined, that Plaintiff is capable of performing his PRW as a financial aid counselor. AR at 26. Thus, the ALJ found that Plaintiff "has not been under a disability, as defined in the Social Security Act, from March 16, 2018, through the date of [the ALJ's] decision." AR at 27 (citing 20 C.F.R. § 404.1520(f)).

## III.   Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012) (citation omitted). "Substantial evidence is 'such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489

F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172). "It requires more than a scintilla, but

less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th

Cir. 2004) (alteration in original)). The Court will "consider whether the ALJ followed the

specific rules of law that must be followed in weighing particular types of evidence in

disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the

Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks

omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does

not prevent an administrative agency's findings from being supported by substantial

evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200). The Court "may not 'displace the

agenc[y's] choice between two fairly conflicting views, even though the [C]ourt would

justifiably have made a different choice had the matter been before it de novo.'" *Id.*

(quoting *Zoltanski*, 372 F.3d at 1200).

## IV.   Discussion

Plaintiff contends that the following issues require reversal: (1) the ALJ failed to

provide any explanation for her holding that Plaintiff's gastrointestinal impairments are

non-severe and failed to include any limitations to account for these impairments in the

RFC; (2) the ALJ failed to properly consider Plaintiff's symptom allegations pursuant to

SSR 16-3p; (3) the ALJ failed to properly consider the opinions of Dr. Cardenas; and

(4) the ALJ failed to consider the opinions of Drs. Stewart and Jones. *Doc. 22* at 25-28.

### A.   The ALJ adequately considered Plaintiff's gastrointestinal impairments.

First, Plaintiff contends that the ALJ erred at Step Two of her sequential

evaluation by characterizing his gastrointestinal impairments as non-severe. *Id.* at 25.

Although the ALJ concluded that Plaintiff had the medically-determinable impairments of

"nephrolithiasis, nausea and vomiting, irritable bowel syndrome, gastroesophageal

reflux disease (GERD), gastroparesis, and hyperlipidemia[,]" she explicitly determined

that these impairments did "not have more than a minimal effect on [his] ability to

perform basic work activities [and] have responded to treatment or have not met the

durational requirements." AR at 22. Accordingly, she determined that the impairments

were non-severe. AR at 22.

Plaintiff maintains that "[f]or all intents and purposes, ALJ Richter completely

ignore[d his] gastric symptoms." *Doc. 27* at 3. The Court agrees that the ALJ did not

provide a detailed discussion of Plaintiff's gastrointestinal impairments in the context of

her Step-Two analysis. Rather, she explained that the "conditions are discussed in

further detail" later in her decision. AR at 22. Indeed, the ALJ purported to consider "all

of [Plaintiff's] medically[-]determinable impairments, including those that are not severe,

when assessing" Plaintiff's RFC at Step Four. AR at 22.

Critically, though, the ALJ only needed to find one severe impairment to proceed

beyond Step Two of the sequential evaluation process. *Allman v. Colvin*, 813 F.3d

1326, 1330 (10th Cir. 2016). So long as an ALJ finds one severe impairment at Step

Two, she may not deny benefits, but must proceed to the next step of the sequential

evaluation process. *Id*. Moreover, to the extent Plaintiff argues that the ALJ erred in

finding his gastrointestinal impairments non-severe at Step Two, any such error was

harmless. The Tenth Circuit has clarified that "the failure to find a particular impairment

severe at [S]tep [T]wo is not reversible error when the ALJ finds that at least one other

impairment is severe." *Id*. Here, the ALJ found multiple severe impairments. *See* AR at 21 (finding "the following severe impairments: degenerative disc disease cervical spine, status post decompression and fusion, obesity, bilateral carpal tunnel syndrome, bilateral epicondylitis, cervical radiculopathy, chronic pain syndrome, peripheral neuropathy, and nonunion spinal fusion").

Still, Plaintiff maintains that the ALJ also erred at Step Four by failing to include any limitations in the RFC to account for his gastrointestinal impairments. *Doc. 22* at 25. He goes on to suggest that the ALJ failed to meaningfully tie the evidence of record "to a rational [sic] for why Plaintiff's gastrointestinal symptoms merits no functional limitation." *Doc. 27* at 3. The Court is unpersuaded.

The ALJ discussed Plaintiff's subjective complaints as they relate to his gastrointestinal conditions, including his assertion that irritable bowel syndrome, gastritis, and diverticulosis prevented him from working. AR at 23. The ALJ acknowledged that Plaintiff testified to a "long history of gastrointestinal issues." AR at 23. She highlighted his testimony that he experienced "irritable bowel syndrome flare-up," involving gastritis and vomiting and lasting about one week approximately two times per year. AR at 23. The ALJ also acknowledged Plaintiff's estimate that he would miss two to three days of work per month due to gastrointestinal issues. AR at 23.

Even so, the ALJ explained that the "medical evidence of record consistently shows few objective findings that would support [Plaintiff's] allegations of functional limitation." AR at 23. In other words, she determined that the objective findings did not support his claims of *disabling* gastrointestinal symptoms. Relatedly, she found that Plaintiff's "statements about the intensity, persistence, and limiting effects of his

symptoms" were "inconsistent because [the] medical evidence generally reflects some improvement and reduction in pain with prescribed treatment modalities." AR at 23.

The ALJ outlined the treatment Plaintiff received for his gastrointestinal impairments. For instance, she discussed records from May 2018, which documented Plaintiff's prescriptions for Beano, Linzess, Xanax, and pantoprazole.[4] AR at 25 (citing AR at 608). She referenced records from an October 11, 2018 visit with Kunal Dalal, M.D., a gastroenterology specialist, for acute exacerbation of abdominal pain. AR at 25 (citing AR at 603). She noted Dr. Dalal's diagnoses of nausea, vomiting, bloating, acute exacerbation of chronic abdominal pain, irritable bowel syndrome with constipation, and GERD. AR at 25 (citing AR at 605). She also acknowledged that Plaintiff made a December 2018 trip to an emergency room for abdominal pain, nausea, and vomiting, at which time he reported a history of irritable bowel syndrome, gastritis,[5] and GERD. AR at 25 (citing AR at 557). At the same time, the ALJ emphasized that a physical examination at that emergency room visit revealed normal bowel sounds, no tenderness, no masses, and no pulsatile masses in Plaintiff's abdomen. AR at 25 (citing AR at 559). She also observed that Plaintiff "stabilized after he was administered Haldol, and he was discharged home with Phenergan." AR at 25 (citing AR at 560). The

---

[4] More precisely, this record indicates that Plaintiff reported taking Beano, Linzess, and Xanax, and that Sandeep C. Patel, M.D., an endoscopist, was prescribing pantaprazole. AR at 608.

[5] In addition, the record to which the ALJ refers indicates a past medical history of gastroparesis and diverticulosis. *See* AR at 557. Gastroparesis is a condition in which a person's "stomach motility is slowed down or doesn't work at all, preventing [the] stomach from emptying properly." *Gastroparesis*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/gastroparesis/symptoms-causes/syc-20355787 (last visited April 27, 2022). Diverticulosis occurs when the inner layer of a person's "intestine pushes through weak spots in the outer lining. The pressure makes them bulge out, making little pouches." *What is Diverticulosis?*, WebMD, https://www.webmd.com/digestive-disorders/what-is-diverticulosis (last visited April 27, 2022).

records from this emergency visit confirm that Plaintiff was "comfortable" and ceased vomiting following administration of Haldol. AR at 560.

As noted above, the ALJ concluded that the medical evidence showed improvement "with prescribed treatment modalities." AR at 23. One such modality was Plaintiff's daily use of Linzess. Plaintiff testified that Linzess caused him to use the restroom early in the morning, which allowed him to function at work. *Doc. 26* at 8 (citing AR at 49-50). Although the ALJ did not recite this testimony in full, she did generally observe that Linzess "provide[d] some relief" to Plaintiff. AR at 23. Plaintiff also testified that he took Zantac to control his gastritis symptoms, which limited his extreme pain and vomiting to approximately twice per year for three to 14 days. *Doc. 26* at 8 (citing AR at 50). The ALJ acknowledged portions of this testimony as well but explained that she found Plaintiff's twice-per-year absence estimate unsupported by the objective evidence.[6] AR at 27.

Plaintiff submits that "[o]ther than summarizing some of Plaintiff's medical records and treatment, the ALJ failed to offer an explanation for her finding that Plaintiff's gastrointestinal symptom allegations [were] not supported by the record and testimony." *Doc. 22* at 25. He insists that the "Court cannot divine, from her recitation of Plaintiff's testimony and the medical evidence, why she rejects Plaintiff's gastrointestinal allegations." *Id*. He goes on, arguing that if the ALJ had properly assessed his symptom testimony, "she may have incorporated the alleged limitations into the RFC," which would have, more likely than not, rendered him disabled. *Id.* at 26. Plaintiff does not clearly

---

[6] The ALJ explained that even if she had included this reported frequency of absences in the RFC, her "decision in this case would remain unchanged[,]" as the VE testified that it would not eliminate Plaintiff's past work as a financial aid counselor. AR at 27.

articulate the limitations he believes the ALJ might have included in the RFC. However, his briefing can be read to imply that the RFC should have accommodated more frequent unscheduled absences from work, as he includes a parenthetical reference to testimony from the VE indicating that one unscheduled absence per month would likely put an employer "over the threshold" of what is generally tolerated by employers. *Id.* (citing AR at 84).

The ALJ recited Plaintiff's testimony that "he would miss about **two to three days of work per month** due to his gastrointestinal issues," but she concluded that the evidence "consistently shows few objective findings that would support [Plaintiff's] allegations of functional limitation." AR at 23 (emphasis added). She implicitly rejected Plaintiff's allegations of two to three absences per month when she found that the record did not support even **biannual** unscheduled absences for Plaintiff's gastritis symptoms. *See* AR at 27 ("I did not find that the record supported an additional limitation that the claimant may be absent from work for one week every six months.")

The Commissioner maintains that Plaintiff "fails to recognize the context" of his testimony concerning unscheduled absences. *Doc. 26* at 9. She notes that Plaintiff explained that *when taking Linzess*, he would experience only two exacerbations of gastritis per year. *Id*. The Commissioner further highlights Plaintiff's testimony that the frequency and severity of his gastritis was a product of the stressfulness of a given job and that when he "worked for [his] dad for 20 years[,] it was really bad." *Id.* (citing AR at 50-51). The ALJ, of course, did not determine that Plaintiff could perform his previous work for his father. *See* AR at 26-27. Nor was it necessary for her to find that he could return to *each* form of PRW in reaching the conclusion that he was not disabled. *See* 20

C.F.R. §§ 404.1520(f); 1560(b)(2).

The Commissioner concedes that Plaintiff alleged "significantly limiting gastrointestinal problems" but insists that the ALJ reasonably accounted for those impairments in her analysis. *Doc. 26* at 8-9 (citing AR at 49-52). Specifically, she maintains that the ALJ's discussion of Plaintiff's treatment records and "recent unremarkable abdominal findings" support her conclusions. *Id*. at 8 (citing AR at 25) (subsequent citations omitted). The Court can surmise that the Commissioner is referring to the ALJ's discussion of the December 2018 emergency department records, discussed above, wherein the medical providers indicated that Plaintiff's "[g]astrointestinal function was normal, with normal bowel sounds, no tenderness, and no masses" and that his vomiting ceased after administration of Haldol. *See* AR at 25 (citing AR at 559-60). The Commissioner also emphasizes that "none of Plaintiff's doctors stated that [his] gastrointestinal conditions caused any particular work-related limitations that persisted *despite* treatment." *Doc. 26* at 8. While this does appear to be the case, the Court is cognizant that this observation was offered by the Commissioner, not by the ALJ in the first instance. *Post-hoc* rationalizations offered by the Commissioner are, of course, unpersuasive. *See Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004).

Ultimately, while the ALJ could have perhaps been more thorough in her assessment of limitations caused by Plaintiff's gastrointestinal impairments, the Court cannot agree with Plaintiff that she "provides no explanation" for her finding that his gastrointestinal symptom allegations are unsupported by the record. Rather, the Court is satisfied that the ALJ adequately considered Plaintiff's testimony and the medical

evidence as they related to his gastrointestinal impairments. Indeed, the ALJ explicitly considered and rejected Plaintiff's allegations concerning the frequency of absences when regularly taking Linzess, finding his allegation unsupported by the evidence. Although the ALJ could have reached a different conclusion, the Court cannot say that contrary evidence overwhelms the ALJ's findings. *See Lax*, 489 F.3d at 1084.

Further, the ALJ concluded alternatively that even if she had included biannual unscheduled absences in Plaintiff's RFC, Plaintiff would remain capable of performing his past relevant work as a financial aid counselor. AR at 26-27; *see also* AR at 84 (VE testifying that "at the skilled level" absences of one week every six months would "generally be tolerated"). Thus, any error in omitting from the RFC such gastritis-related absences was harmless.

For all of these reasons, Plaintiff's motion will be denied on this issue.

### B. The ALJ adequately considered Plaintiff's neck impairments, including Plaintiff's symptom allegations.

Next, Plaintiff maintains that the ALJ failed to adequately consider his subjective complaints related to his neck impairment pursuant to Social Security Ruling 16-3p, 2017 WL 5180304 (Oct. 25, 2017). *Doc. 22* at 26. Plaintiff contends that the ALJ neglected to "meaningfully explain why, given the severe pathology, extreme treatment, and great work history, she discredit[ed his] symptom allegations." *Id.* Moreover, Plaintiff maintains that the ALJ failed to "meaningfully discuss the SSR 16-3p factors." *Id.* According to Plaintiff, the ALJ merely summarized *some* of the relevant medical evidence and offered a conclusory determination that her RFC determination was consistent with the record. *Id.* at 27.

The Commissioner points out that "the ALJ was not under an[y] obligation to 'discuss every piece of evidence' or to 'reference everything in the administrative record.'" *Doc. 26* at 11 (citing *Wall*, 561 F.3d at 1067; *Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010)). Rather, she was obligated to articulate specific reasons for the weight given to Plaintiff's subjective complaints and to provide a decision supported by and consistent with the evidence, which would allow a subsequent reviewer to assess her evaluation. *See* SSR 16-3p, 2017 WL 5180304, at *10. The Commissioner insists that the ALJ did just that.

Social Security Ruling 16-3p defines the two-step process an ALJ must use to evaluate a claimant's symptoms. *Id.* at 3. At the first step, the ALJ "consider[s] whether there is an underlying medically determinable physical or mental impairment[] that could reasonably be expected to produce [the] individual's symptoms, such as pain." *Id*. At the second step, after the ALJ has found such an impairment, she "evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit [the] individual's ability to perform work-related activities . . . ." *Id*.

> As part of the step two evaluation, the ALJ considers the record evidence, the claimant's statements, medical and non-medical source statements, and the non-exhaustive list of factors in 20 C.F.R. § [404].1529(c)(3), which include:
>
> 1. Daily activities;
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Ramirez v. Berryhill*, No. CIV 17-0781 KBM, 2018 WL 4915830, at *8 (D.N.M. Oct. 10, 2018) (quoting SSR 16-3p, 2017 WL 5180304, at *7-8).

Here, the ALJ found that Plaintiff had medically-determinable impairments that could cause the symptoms he alleged, but his statements as to the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence." AR at 23. Relevant to this issue, the ALJ discussed:

Daily activities: The ALJ's observations of Plaintiff's activities of daily living were primarily related to Plaintiff's own allegations of severe functional limitations. As detailed by the ALJ, Plaintiff reported that, even following his cervical spine surgery, he "constantly drop[ped] things, and ha[d] difficulty writing[,] using a keyboard[,] . . . and buttoning a shirt." AR at 23. Plaintiff also testified that he did not cook and was unable to care for his two-year-old son. AR at 23. Moreover, he asserted that "his neck problems prevent[ed] him from doing activities such as laundry or yard work." AR at 23-24 (citing AR at 248).

The location, duration, frequency, and intensity of pain or other symptoms: The ALJ acknowledged Plaintiff's allegation that his neck pain and bulging discs in his cervical spine required him to stop working. AR at 23. She noted that in his function report he reported that neck problems caused difficulty with reaching and lifting his arms or holding items for extended periods. AR at 24 (citing AR at 248-52). Indeed, according

to Plaintiff, his cervical spine impairment caused numbness in his hands, which in turn caused him to frequently drop things and experience difficulty with fine fingering. AR at 23. Nevertheless, the ALJ determined that the "medical evidence of record consistently shows few objective findings that would support his allegations of functional limitations." AR at 23.

The ALJ conceded that the medical evidence established "limitations in [Plaintiff's] function due to degenerative disc disease in his cervical spine," but she explained that the "examinations and objective findings suggest a lesser degree of functional limitation than that alleged by [Plaintiff]." AR at 24. In other words, she disagreed that the limitations caused by his cervical impairment were disabling. The ALJ also observed that the medical evidence "generally reflect[ed] some improvement and reduction in pain with prescribed treatment modalities." AR at 23.

According to the ALJ, some improvements were noted in the treatment records with respect to Plaintiff's neck impairment, though he consistently reported pain. AR at 25. The ALJ acknowledged that the results of Plaintiff's May 2018 cervical surgery were mixed. AR at 25. She emphasized that progress notes in the months following surgery indicated that he was "recovering well" and "slowly improving" and that "[e]xaminations revealed no gross abnormalities[] and . . . full strength in his cervical spine." AR at 25 (citing AR at 382, 387). At the same time, she explained that Plaintiff "continued to experience pain symptoms related to his neck, arms, and hands during the remainder of 2018 and 2019." AR at 25. For instance, Plaintiff reported improved neck pain but a burning sensation in his shoulders. AR at 25 (citing AR at 382). Plaintiff also continued to report bilateral hand numbness. AR at 25 (citing AR at 387, 588). The ALJ specifically

discussed the findings of a December 2018 nerve conduction study, which showed "moderate acute on [sic] chronic C6-8 radiculopathy on the left and C5-6 on the right." AR at 25 (citing AR at 598). The ALJ explained that Plaintiff received epidural injections in his cervical spine, resulting in a "much improved" left arm but a right arm that still "bothered him." AR at 25 (citing AR at 573). Ultimately, the ALJ accounted for Plaintiff's complaints of pain and numbness by limiting him to sedentary work with no climbing, crawling, or exposure to vibration, and with only occasional reaching, handling, fingering, and feeling bilaterally. AR at 22.

Type, dosage, effectiveness, and side effects of any medication: Although the ALJ did not list the prescription medications taken by Plaintiff for his neck pain, she did mention that he received medication refills. AR at 25. She also acknowledged Plaintiff's testimony that he experienced negative side effects from prescription medication, including stomach pain. AR at 23.

Treatment other than medication: The record reveals that Plaintiff was largely treated for his cervical impairment with methods other than prescription drugs, including surgery. The ALJ discussed Plaintiff's May 29, 2018 anterior cervical discectomy and fusion of C5-7, observing that while the surgery initially provided some relief, his pain returned approximately a month after surgery. AR at 23.

The ALJ also discussed Plaintiff's epidural injections, which Plaintiff testified provided him some relief, with a pain rating of 4/5 after injection. AR at 23. The ALJ explained that after Plaintiff received epidural injections to his cervical spine in December 2018, he reported the next month that his left arm was "much improved" but his right arm "still bothered him." AR at 25 (citing AR at 573). The ALJ also noted that

Plaintiff "received trigger point lidocaine injections in September 2019" but "later reported the injection caused persistent vomiting." AR at 25 (citing AR at 870). As the ALJ observed, Plaintiff's medical provider recommended discontinuing non-steroidal anti-inflammatory drugs until he was evaluated by a gastroenterology specialist. AR at 25 (citing AR at 870).

The ALJ discussed injections Plaintiff received in his wrists after an assessment of carpal tunnel syndrome. AR at 24 (citing AR at 384, 387, 818). The ALJ explained that in July 2018 Plaintiff reported that the injections provided good relief. AR at 24 (citing AR at 384, 387, 818).

Finally, the ALJ explained that Plaintiff "reported undergoing physical therapy in the past with little relief." AR at 25 (citing AR at 573).

Plaintiff, for his part, contends that the ALJ failed to adequately consider his "failed spinal fusion, steroid injections, trigger point injections and physical therapy" and that she "d[id] not explain how [his] inability to take pain medication due to his severe gastrointestinal problems factor[ed] into her assessment." *Doc. 22* at 26. But, as demonstrated above, the ALJ explicitly discussed each of these issues. Plaintiff fails to articulate functional impairments he experiences for which the ALJ failed to account.

Plaintiff also suggests that the ALJ failed to "explain how the proposed second fusion suggested by Plaintiff's back surgeon factors into her assessment of his alleged symptoms." *Id*. (citing AR at 852). Plaintiff cites an April 26, 2019 record, which provides that he:

> continues to be symptomatic with cervical radiculopathy likely related to his residual foraminal narrowing and nonunion at C5-6 and C6-7. Posterior facet fusion at C5-6 and C6-7 was discussed today using facet cages. I

17

believe he is a candidate for that after this amount of time, if he prefers we
can reassess in 3 months time.

AR at 852. While the ALJ did not recite this portion of the record in her decision, she did

refer to the record, explaining that she found the orthopedic specialist's opinion

unpersuasive. AR at 26. While Plaintiff might have weighed the evidence and opinions

differently, his contention that they were inadequately considered fails.

The ALJ discussed evidence pertaining to the SSR 16-3p factors and found that

Plaintiff's subjective complaints of disabling neck pain were not entirely consistent with

other evidence of record, including evidence showing improvement of symptoms with

treatment and largely mild objective findings. *See* AR at 23-25. She also provided a

detailed summary of the records documenting the evaluation of and treatment for

Plaintiff's cervical neck impairment. *See* AR at 23-26.

The ALJ began with Plaintiff's pre-surgery records in which he complained of

severe pain in his neck and arms, aggravated by gripping and lifting. AR at 24. She

observed objective findings from an MRI of "mild foraminal stenosis at C3-4[,] severe

right and moderate left foraminal stenosis at C4-5, . . . left-sided cord compression at

C5-6, and bilateral foraminal stenosis at C6-7." AR at 24 (citations omitted).

The ALJ also discussed medical records following Plaintiff's May 29, 2018

"anterior cervical discectomy and fusion of the C5-7." AR at 25 (citing AR at 773). She

highlighted the allegations of continued pain and numbness recorded in those records

and discussed the negative side effects Plaintiff experienced following lidocaine

injections. AR at 25 (citing AR at 870).  The ALJ recited many of the relevant objective

findings, including "moderate acute on [sic] chronic C6-8 radiculopathy on the left and

C5-6 on the right." AR at 25 (citing AR at 598). Nevertheless, she concluded that

progress notes in the months following surgery indicated that Plaintiff was "recovering

well" and "slowly improving" and that "[e]xaminations revealed no gross abnormalities[]

and . . . full strength in his cervical spine." AR at 25 (citing AR at 382, 387).

In terms of medical opinions, the ALJ recited the opinion of Dr. Rick Cardenas

that Plaintiff had "significant limitations with reaching, handling, and fingering, and would

be unable to reach overhead." AR at 26 (citing AR at 886). For reasons explained in her

decision and discussed later in this opinion, the ALJ found this opinion unpersuasive.

AR at 26. The state agency medical consultants, in contrast, opined that Plaintiff "could

*frequently* push and pull with his upper extremities, could *frequently* overhead reach,

handle, finger, and feel." AR at 26 (emphasis added). The ALJ found these opinions

"somewhat persuasive" but determined that Plaintiff's subjective reports and the medical

record as a whole required additional limitations, including only *occasional* reaching,

handling, fingering, and feeling. *See* AR at 22, 26.

The ALJ offered the following rationale for not further limiting Plaintiff: "Although

medical evidence of record establishes some limitations in [Plaintiff's] function due to

degenerative disc disease in his cervical spine, examinations and objective findings

suggest a lesser degree of functional limitation than that alleged by [Plaintiff]." AR at 24.

Again, the ALJ specified that Plaintiff's physical examinations "revealed [a] full range of

motion in his cervical spine, and full strength." AR at 24 (citing AR at 382, 575). She

acknowledged that imaging and testing supported Plaintiff's allegations of "issues with

hand weakness," for which she accounted by limiting Plaintiff to sedentary work with

only occasional reaching, handling, fingering, and feeling bilaterally. *See* AR at 22, 26.

In short, the Court finds the ALJ's assessment of Plaintiff's neck impairment and subjective complaints of neck pain to be adequate, compliant with SSR 16-3p, and supported by substantial evidence. The Court may not reweigh the record evidence; it may only review the ALJ's "decision to ensure that she applied the correct legal standard and that her findings are supported by substantial evidence." *Kayser v. Berryhill*, No. 16-cv-0978 SMV, 2017 WL 4857442, at *3 (D.N.M. Oct. 25, 2017) (citing *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)). The Court finds that the ALJ's findings regarding Plaintiff's subjective complaints of his symptoms are supported by and linked to substantial evidence in the record. *See id.* at *4 (citing *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). Thus, Plaintiff's motion will be denied with respect to this issue.

**C.    The ALJ did not commit reversible error in his evaluation of Dr. Cardenas's Medical Source Statement.**

Because Plaintiff filed his claim after March 27, 2017, *see* AR 198-204, the ALJ was required to evaluate the medical opinions and prior administrative findings under the revised regulations found in 20 C.F.R. § 404.1520c. *See* 20 C.F.R. § 404.1520c; *see also* AR at 22 (explanation by the ALJ that she "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 [C.F.R. §] 404.1520c"). Claims that were filed prior to March 27, 2017, were evaluated under the previous regulations found in 20 C.F.R. § 404.1520. The revised regulations differ from the prior rule in several relevant respects.

First, the current regulations expand on the definition of an acceptable medical source and include licensed physicians, licensed psychologists, and licensed advanced practice nurses. *See* 20 C.F.R. § 404.1520c. Second, under the prior rules, medical

opinions were weighted differently depending on the medical source's relationship to the claimant. *See* 20 C.F.R. § 404.1520(c)(1)-(2) (according "more weight" to the opinions of an examining source than a non-examining source and "controlling weight" to a treating source's well-supported opinions that are "not inconsistent with the other substantial evidence" of record). The current rules place no special weight on opinions offered by a treating source or otherwise. *See* 20 C.F.R. § 404.1520c(a) (providing that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)"). "Instead, medical opinions and [prior administrative medical] findings are evaluated for their persuasiveness according to a uniform set of considerations." *Purdy v. Berryhill*, 887 F.3d 7, 13 n.8 (1st Cir. 2018).

The evaluation of these considerations comprises the third relevant difference between the two sets of regulations. While the considerations "are similar under the prior and current rules, *compare* 20 C.F.R. § 404.1520c(c) and 416.920c(c), *with* 20 C.F.R. § 404.1527(c) [sic] and 416.927(c), the prioritization of the factors and requirements for articulating how an adjudicator consider[s] each factor differ." *Silva v. Saul*, No. CV 19-0913 WJ/KK, 2020 WL 4220862, at *4 (D.N.M. July 23, 2020). The five factors to consider include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. 20 C.F.R. § 404.1520c(c)(1)-(5). Previously, an adjudicator gave special consideration to a source's relationship to a client. *See, e.g.*, *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004); *Silva*, 2020 WL 4220862, at *4. The revised regulations, however, provide that the factors of supportability and consistency are "[t]he most important factors" in considering "the

persuasiveness of medical opinions and prior administrative findings . . . ." 20 C.F.R.

§ 404.1520c(a). In determining an opinion's persuasiveness, an ALJ must "explain how

she considered the supportability and consistency factors . . . but [is] not required to[]

explain how she considered the [remaining] factors . . . ." 20 C.F.R. § 404.1520c(b)(2),

(c)(3)-(5).

As before, ALJs must "consider all relevant evidence in the case record in

reaching their disability determination." *Silva*, 2020 WL 4220862, at *4 (citing 20 C.F.R.

§§ 404.1520b, 416.920b). "Although an ALJ is not required to discuss every piece of

evidence, '[t]he record must demonstrate that the ALJ considered all of the evidence[.]'"

*Id.* (quoting *Clifton*, 79 F.3d at 1009-10). "The ALJ must discuss not only the evidence

supporting her decision but also 'the uncontroverted evidence she chooses not to rely

upon, as well as significantly probative evidence she rejects.'" *Id.* (quoting *Clifton*, 79

F.3d at 1010).

Here, Plaintiff alleges that the ALJ erred by "fail[ing] to meaningfully consider" the

consistency and supportability of the opinion of his primary care provider, Rick

Cardenas, M.D. *Doc. 22* at 27. Dr. Cardenas submitted a "Medical Source Statement:

Physical Limitations" on November 13, 2019, in which he indicated he had seen Plaintiff

"4 times over 4 months." AR at 883-87. Dr. Cardenas reported the following diagnoses:

"chronic neck pain; neuropathy; IBS; diverticulosis; GERD; and hyperlipidemia." AR at

883. He further noted that Plaintiff experienced "neck pain; shoulder pain; [and]

numbness [left] hand"; had undergone physical therapy, acupuncture, and trigger point

injections; and was scheduled to see a pain specialist that same month. AR at 883.

The ALJ discussed the opinions contained in Dr. Cardenas's Medical Source Statement. AR at 26 (citing AR at 883-87). She recounted, for instance, that Dr. Cardenas "opined [Plaintiff] had significant limitations with reaching, handling, and fingering, and would be unable to reach overhead." AR at 26 (citing AR at 886). She also highlighted Dr. Cardenas opinion that Plaintiff "would be absent from work more than four days per month." AR at 26 (citing AR at 886). She ultimately found Dr. Cardenas's opinions unpersuasive, however. AR at 26. She reasoned that his treatment notes did not support the opined absences from work and "[m]ore importantly" that his "own notes demonstrate that this opinion does not constitute his objective medical assessment[,]" as "most of the information contained in his opinion was based on subjective answers provided by" Plaintiff. AR at 26. Accordingly, the ALJ found Dr. Cardenas' opinions unhelpful in formulating the RFC. AR at 26.

Under 20 C.F.R. § 404.1520c, Dr. Cardenas's opinions were not entitled to controlling weight despite his role as Plaintiff's primary care provider. *See* 20 C.F.R. § 404.1520c. However, as with all medical opinions, the ALJ was required to articulate *how* she considered Dr. Cardenas's opinions and whether she found them persuasive. *See id*. Although the ALJ explicitly discussed Dr. Cardenas's opinions, reciting some of them in her decision, the Court must be satisfied that she sufficiently articulated *how* she considered those opinions with regard to two critical factors: consistency and supportability. *See* 20 C.F.R. § 404.1520c(b)(2). Notably, "there is a difference between [an ALJ] considering evidence and articulating *how* [she] consider[ed] evidence." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5858, 2017 WL 168819 (Jan. 18, 2017) (emphasis added). Thus, the question here

23

is whether the ALJ adequately articulated *how* she considered the supportability and consistency of Dr. Cardenas's opinions.

Plaintiff submits that the ALJ failed to adequately consider either factor. *Doc. 22* at 27. Critically, an ALJ must – at the very least – provide an explanation that allows a reviewing court to follow her reasoning and communicates *how* she considered the factors of supportability and consistency. *See* 20 C.F.R. § 404.1520c.

### i. Supportability Factor

The supportability factor examines how well a medical source supported his own opinion with "objective medical evidence" and "supporting explanations." 20 C.F.R. § 404.1520c(c)(1). Plaintiff insists that the ALJ failed to elaborate on which portions of the record were inconsistent with Dr. Cardenas's opinions. *Doc. 22* at 28.

The ALJ specifically found that "[n]othing in Dr. Cardenas's treatment notes supports his conclusion that [Plaintiff] would miss work to the extent noted in [Dr. Cardenas's] opinion." AR at 26. She explained that Dr. Cardenas's Medical Source Statement was supported only by Plaintiff's subjective answers rather than by any objective medical assessment. AR at 26.

Having reviewed Dr. Cardenas's explanations in his Medical Source Statement and compared them with the record, including Dr. Cardenas's treatment notes, the Court is satisfied that the ALJ adequately considered the supportability of his opinion. AR at 854-65. Indeed, the ALJ's determination that the opinion was not adequately supported is a reasonable one supported by substantial evidence. Even if the Court might have reached a different conclusion had it weighed the evidence *de novo*, it must defer to the ALJ's findings when, as here, those findings are supported by substantial

evidence. *See Lax*, 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.").

### ii. Consistency Factor

The consistency factor, in turn, calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. § 404.1520c(c)(2). As to consistency, Plaintiff asserts that the ALJ failed to consider whether Dr. Cardenas's opinions were consistent with those of Drs. Stewart, Jones, and Behrend. *Doc. 22* at 27. As Plaintiff observes, Drs. Stewart and Jones opined that he suffered from debilitating impairments, while Dr. Behrend authorized work absences from April 26, 2019, to July 26, 2019. *Id*.

The Court agrees that the ALJ did not explicitly compare the opinions of Dr. Cardenas with those of Dr. Elaine Stewart, Dr. Judith Jones, or Dr. Caleb Behrend. Indeed, that the ALJ did not specifically mention inconsistencies between Dr. Cardenas's opinion and any "evidence from other medical sources and nonmedical sources" in the record. *See* 20 C.F.R. § 404.1520c(c)(2). The Commissioner does not contend otherwise. Instead, she merely suggests that the limitations in Dr. Cardenas's Medical Source Statement "appear to be more restrictive than those included in the ALJ's RFC finding." *Doc. 26* at 13-14 (citing AR at 22, 884-86).

In short, the ALJ failed to provide the minimum level of articulation necessary for a proper consistency analysis. Even so, for the reasons that follow, the Court will not reverse on this ground.

### iii.  Medical Opinions from a Medical Source

Skirting the consistency factor issue almost entirely, the Commissioner maintains that the ALJ's treatment of Dr. Cardenas' opinions was proper for a separate reason. She suggests that the ALJ was not *required* to assess Dr. Cardenas's opinion pursuant to 20 C.F.R. § 404.1520c, because "Dr. Cardenas disavowed the responses in the form as his own 'opinion.'" *Doc. 26* at 14. The Commissioner posits that the Medical Source Statement "was not provided by a medical source, such that the ALJ would be required to assess it using the factors for assessing medical source opinions." *Id.* at 14-15. According to the Commissioner, the regulations provide that an ALJ will consider and assess "any medical opinion(s) . . . , including those **from** your medical sources. When a **medical source** provides one or more medical opinions . . . we will consider those medical opinions . . . **from** that medical source together using the factors listed in [this regulation]." *Id.* (quoting 20 C.F.R. § 404.1527(a)) (emphasis added by the Commissioner). In the Commissioner's view, the statements in the Medical Source Statement were simply not provided **by a medical source** but instead by Plaintiff. The Commissioner notes that it has long been the case, even before the relevant regulations were revised, that an ALJ could reasonably discount a treating physician's opinion that was based upon a claimant's subjective assertions rather than objective medical evidence. *Id.* at 15 (citing *White v. Barnhart*, 287 F.3d 903, 907-08 (10th Cir. 2001); *Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009)).

The cases referenced by the Commissioner relate to the old regulations that no longer govern an ALJ's evaluation of treating physician opinions. And despite her acknowledgement elsewhere in her briefing that revised regulations apply to Plaintiff's

case, *see id.* at 15, she recites language from 20 C.F.R. 404.1520, the former regulation, no longer applicable to this case.

Still, the revised regulation provides that: "[w]hen *a medical source provides* one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings *from that medical source* together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. 20 C.F.R. § 404.1520c. Thus, even under the revised regulation, an adjudicator need only apply the enumerated factors when considering medical opinions *from a medical source*.

In response, Plaintiff attempts to cast the Commissioner's position as post-hoc rationalization. He argues that "ALJ Richter's rationale contains nothing about Dr. Cardenas' opinions not coming from a medical source or that the opinions were not adopted by him." *Doc. 27* at 7. But the Court disagrees. Although Dr. Cardenas indicated various functional limitations within the Medical Source Statement (e.g., able to sit for 15 minutes, stand for 30 minutes, and use his hands and fingers for 5% of the day; rarely able to look up, turn head, or twist; and never able lift more than 10 pounds, climb ladders, or reach overhead), he offered the following handwritten explanation at the end of the form: "Most information social security wants to know on John Jeff Foy . . . are subjective answers given by patient. If objective physical finding details [are] needed[,] this can be obtained by pain/spine M.D." AR at 887. Moreover, when asked to "[i]dentify the clinical findings and objective signs" related to Plaintiff's pain, Dr. Cardenas declined to respond and instead stated that he "deferred to pain/spine M.D." AR at 883. Dr. Cardenas also "deferred to pain/spine M.D." as to any prognosis for

27

Plaintiff's conditions. AR at 883. He made handwritten notes indicating that his answers to certain questions were as stated by Plaintiff. *See* AR at 884-85. For instance, alongside his notation that Plaintiff required unscheduled breaks every 30 minutes for 30 minutes to 3 hours, he wrote: "Pt states this." AR at 885.

Even so, Plaintiff suggests that Dr. Cardenas's signature at end of the Medical Source Statement transforms the opinions therein into his own opinions. *Doc. 27* at 7. Additionally, he argues that "Dr Cardenas [] plainly does not rely on Plaintiff's subjective symptoms to complete the ***entire*** questionnaire." *Id.* (citing AR at 883-87) (emphasis added). Plaintiff goes on, arguing that "Dr. Cardenas specifically indicates which of his opinions are exclusively based on Plaintiff's subjective complaints." *Id.* at 8. He concedes, for example, that the need to shift positions at will, the ability to work under moderate work stress, and the rating of his daily pain were based on his subjective complaints. *Id.* at 8.

But contrary to Plaintiff's position, the caveat Dr. Cardenas provided at the end of the form indicates that "***most***" of the information in the form was based upon his subjective answers. AR at 887. And, critically, the ALJ acknowledged as much in her rejection of those opinions. *See* AR at 26 (explaining that Dr. Cardenas "specifically advised that most of the information contained in his opinion was based on the subjective answers provided by the claimant"). Where most of the information, including "opinions" as to functional limitations, was derived from Plaintiff's subjective allegations, and where Dr. Cardenas was candid about lacking objective physical findings to support the responses he provided in the form, the Court agrees with the Commissioner that the ALJ did not fail to properly evaluate opinions ***from a medical source***. The ALJ

identified the responses in the Medical Source Statement as subjective answers from Plaintiff, and substantial evidence supports this finding. Plaintiff's motion will be denied on this issue.

> ### D.   The ALJ did not commit reversible error when she failed to analyze statements by Drs. Stewart and Jones.

Plaintiff's final argument consists of only two sentences in his Motion to Remand. *See Doc. 22* at 28. He argues that it is "black letter law" that an ALJ must consider all medical opinions and explain their persuasiveness. *Id.* (citing 20 C.F.R. § 404.1520c; *Martinez v. Astrue*, 422 F. App'x 719, 724 (10th Cir. 2011)). As such, Plaintiff contends that the ALJ's failure to discuss the opinions of Dr. Elaine Stewart and Dr. Judith Jones, two examining physicians who opined that his conditions were "debilitating," warrants remand. *Id*. The statements to which Plaintiff apparently refers appear in Medical Marijuana Physician Certification forms. *See* AR at 642, 688. On each form, the doctors initialed a statement indicating that they "made or confirmed [a] diagnosis of a debilitating medical condition." *See* AR at 642, 688.

In response to Plaintiff's allegation of error, the Commissioner contends that these statements attributed to Drs. Stewart and Jones – that Plaintiff's conditions are debilitating – do not qualify as medical opinions under the applicable regulations. *Doc. 26* at 15. The Commissioner recites the revised regulation's definition of a medical opinion: "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities . . . ." *Id.* (quoting 20 C.F.R. § 404.1513(a)(2)). Among the abilities enumerated within the regulation are the ability to sit, stand, walk,

lift, carry, push, and pull. 20 C.F.R § 404.1513(a)(2). The Commissioner maintains that Drs. Stewart and Jones's affirmance of debilitating conditions are not medical opinions but "[e]vidence that is inherently neither valuable nor persuasive." *Doc. 26* at 15. (quoting 20 C.F.R. § 404.1520b(c)). The Court agrees.

Pursuant to 20 C.F.R. § 404.1520b(c)(3)(i), statements that an individual is able (or unable) to work are "[s]tatements on issues reserved to the Commissioner." Likewise, opinions about a claimant's RFC which fail to provide descriptions of his "functional abilities and limitations" are categorized as "[s]tatements on issues reserved to the Commissioner." 20 C.F.R. § 404.1520b(c)(3)(v). Both types of statements are described by the regulation as "inherently neither valuable nor persuasive." *See* 20 C.F.R. § 404.1520b(c). More importantly, the regulation directs that an ALJ need not provide any analysis as to how she considered such statements, even under 20 C.F.R. § 404.1520c. *See* 20 C.F.R. § 404.1520b(c).

Relevant to Drs. Stewart and Jones, the Commissioner insists that vague statements indicating that Plaintiff's conditions were "debilitating" fail to address what Plaintiff could still do despite his impairments and fails to describe work-related limitations. The Court agrees. Plaintiff appears to treat the statements by Drs. Stewart and Jones as opinions that he is unable to work. *See Doc. 22* at 28; *Doc. 27* at 8. But, as explained above, such statements are reserved to the Commissioner, are not valuable or persuasive, and do not necessitate a § 404.1520c assessment by the ALJ. The Court will deny Plaintiff's motion as to this issue.

Wherefore,

**IT IS ORDERED** that Plaintiff's Opposed Motion to Reverse and/or Remand (*Doc. 22*) is denied. A final order pursuant to Rule 58 of the Federal Rules of Civil Procedure will be enter concurrently herewith.

_____

UNITED STATES MAGISTRATE JUDGE
Presiding by Consent